**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | |
|---|---|
| AMY E. ROBERTSON,           ) | |
|                      ) | |
|      Plaintiff,        ) | |
|                      ) | |
|    vs.              ) | Case No. 1:12CV 75 JAR(LMB) |
|                      ) | |
| CAROLYN W. COLVIN,[1]    ) | |
| Acting Commissioner of Social Security,   ) | |
|                      ) | |
|      Defendant.      ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This is an action under 42 U.S.C. § 405(g) for judicial review of defendant's final decision

denying the application of Amy E. Robertson for Supplemental Security Income under Title XVI

of the Social Security Act. The cause was referred to the undersigned United States Magistrate

Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b). Plaintiff has filed a

Brief in Support of Plaintiff's Complaint. (Document Number 11). Defendant has filed a Brief in

Support of the Answer. (Doc. No. 16).

**Procedural History**

On December 1, 2009, plaintiff filed her application for benefits, claiming that she became

unable to work due to her disabling condition on September 14, 2007. (Tr. 112-16). This claim

---

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

was denied initially, and following an administrative hearing, plaintiff's claim was denied in a written opinion by an Administrative Law Judge (ALJ) dated February 24, 2011. (Tr. 57, 7-19). Plaintiff then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA), which was denied on March 21, 2012. (Tr. 4, 1-3). Thus, the decision of the ALJ stands as the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481.

<h3 style="text-align:center">Evidence Before the ALJ</h3>

**A.   ALJ Hearing**

Plaintiff's administrative hearing was held on January 27, 2011. (Tr. 25). Plaintiff was present and was represented by counsel. (Id.). Also present was vocational expert Gary Weimholt. (Id.).

In his opening statement, plaintiff's attorney stated that plaintiff underwent spinal fusion at L4-L5 and L5-S1 in 2006, which helped with the pain and numbness in plaintiff's leg but did not help her back pain. (Tr. 28). Plaintiff's attorney stated that one of the screws from the fusion subsequently fractured, resulting in severe right leg and hip pain. (Id.). Plaintiff's attorney argued that plaintiff meets listing 1.04A. (Id.). Plaintiff's attorney stated that plaintiff also suffers from "a bipolar condition." (Id.).

Plaintiff's attorney requested that plaintiff's alleged onset of disability date be changed to plaintiff's filing date of November 10, 2009. (Tr. 29).

The ALJ examined plaintiff, who testified that she was forty-six years of age. (Tr. 30). Plaintiff stated that she was five-feet eleven-inches tall, and weighed 160 pounds. (Id.).

Plaintiff testified that she was not receiving workers' compensation or unemployment

benefits.  (Id.).

Plaintiff stated that her driver's license was expired, but she was able to drive.  (Id.).

Plaintiff testified that she graduated from high school and attended one year of college but did not receive a degree or certificate.  (Tr. 31).  Plaintiff stated that she did not receive any type of vocational training.  (Id.).

Plaintiff testified that she last worked in 2000, at which time she did bookkeeping for her husband's garbage business.  (Id.).  Plaintiff stated that she performed this position for one year, and stopped when the company went out of business.  (Tr. 32).

Plaintiff testified that she did not work for a period of time prior to working for the garbage business.  (Id.).  Plaintiff stated that she worked for her ex-husband's wood hauling business, loading and unloading trucks, for five to six years.  (Id.).  Plaintiff testified that she injured her back working at this position.  (Id.).  Plaintiff stated that she left this position due to her back problems, and because she and her husband divorced.  (Id.).

Plaintiff testified that she worked as a secretary in Illinois prior to working for the wood business.  (Id.).  Plaintiff stated that she quit this position when she moved to Missouri in 1995. (Tr. 33).

Plaintiff testified that she is unable to work because she experiences constant pain in her lower back that radiates down her right leg.  (Id.).  Plaintiff stated that changing positions decreases her pain.  (Tr. 34).  Plaintiff testified that her pain is typically an eight on a scale of one to ten.  (Id.).

Plaintiff stated that she sees doctors at Advanced Pain Center in Poplar Bluff.  (Id.).

Plaintiff testified that she takes Hydrocodone,[2] Trazodone,[3] Tramadol,[4] and a pain cream.  (Id.).  Plaintiff stated that the Hydrocodone takes the edge off her pain, but does not relieve it completely.  (Tr. 35).  Plaintiff testified that she has no side effects from her medication.  (Id.).

Plaintiff stated that she underwent spinal fusion surgery.  (Id.).  Plaintiff testified that her doctors have not recommended any additional surgery or treatment.  (Id.).  Plaintiff stated that the surgery initially helped with her leg pain, but it did not help her back pain.  (Tr. 36).  Plaintiff testified that her leg pain returned when she fractured a screw.  (Id.).

Plaintiff stated that she has to sit to load the dishwasher.  (Id.).  Plaintiff testified that she has to stop and rest when walking to her neighbor's house a quarter of a mile from her home.  (Id.).  Plaintiff stated that she is able to lift a gallon of milk.  (Tr. 37).  Plaintiff testified that she has difficulty bending.  (Id.).

Plaintiff stated that she has difficulty with her short-term memory.  (Id.).  Plaintiff testified that she also has difficulty with concentration.  (Id.).  Plaintiff stated that she watches television but she is not able to watch an entire episode because she will "space off."  (Tr. 38).  Plaintiff testified that she is able to read.  (Id.).  Plaintiff stated that she does not use the computer.  (Id.).

Plaintiff testified that she has some difficulty dealing with people.  (Id.).

---

[2]Hydrocodone is an opioid analgesic indicated for the relief of moderate to moderately severe pain.  See Physician's Desk Reference (PDR), 3144-45 (63rd Ed. 2009).

[3]Trazodone is an antidepressant drug indicated for the treatment of depression and other mood disorders.  See WebMD, http://www.webmd.com/drugs (last visited May 7, 2013).

[4]Tramadol is a centrally acting synthetic analgesic indicated for the management of moderate to moderately severe chronic pain in adults who require around-the-clock treatment of their pain for an extended period of time.  See PDR at 2429.

Plaintiff stated that, on a typical day, she takes care of her animals, tries to clean her house, and watches television. (Id.). Plaintiff testified that she has five dogs and five cats. (Id.). Plaintiff stated that she feeds her animals, but her husband lifts the water bowls for her. (Tr. 39).

Plaintiff testified that she has difficulty sleeping. (Tr. 40). Plaintiff stated that she has problems falling asleep because her mind "won't shut off," and she has difficulty staying asleep due to pain. (Id.).

Plaintiff testified that she is able to shop for groceries, but her husband carries the bags in from the car. (Id.).

Plaintiff stated that she occasionally crotchets as a hobby. (Id.).

Plaintiff's attorney examined plaintiff, who testified that she takes Hydrocodone three times a day, and that it "takes the edge off for maybe an hour." (Id.). Plaintiff stated that she "wiggle[s] around" a lot to relieve her pain. (Tr. 41). Plaintiff testified that she lies down every two-and-a-half to three hours due to pain. (Id.). Plaintiff stated that, if she were not able to lie down, her pain would increase. (Id.). Plaintiff testified that occasionally lies down and props her legs with a pillow, which helps her pain until she gets up. (Id.).

Plaintiff stated that she was able to walk approximately a quarter of a football field. (Tr. 42).

Plaintiff testified that, if she tried to lift two gallons of milk, her legs would go numb. (Tr. 43). Plaintiff stated that this occurs about three times a month. (Id.).

Plaintiff testified that she would be willing to undergo surgery if her doctors indicated it would help. (Id.).

Plaintiff stated that she experiences panic attacks. (Id.). Plaintiff testified that, when she

has a panic attack, she becomes faint, her lips go numb, and she has to lie down or she will faint. (Id.). Plaintiff stated that she experiences panic attacks every three to four months, usually when she is out in public. (Id.).

Plaintiff testified that her biggest problem is her back. (Id.).

Plaintiff stated that she would not be able to work at a position that allowed her to alternate between sitting and standing because she has to lie down every two to two-and-a-half hours. (Tr. 44).

The ALJ re-examined plaintiff, who testified that her panic attacks are triggered by being around people and they last close to one hour. (Id.). Plaintiff stated that she has not sought medical attention due to her panic attacks, and that her panic attacks resolve on their own. (Tr. 45).

The ALJ examined the vocational expert, Gary Weimholt, who testified that plaintiff's past work is classified as: wood scrap handler (heavy, unskilled); secretary (sedentary, skilled) and bookkeeper (sedentary, skilled). (Tr. 48).

The ALJ asked Mr. Weimholt to assume a hypothetical individual with plaintiff's background and the following limitations: capable of performing sedentary work; requires a sit/stand option every half-hour, while remaining on task; can perform simple, repetitive tasks; and only occasional contact with supervisors, coworkers, and the public. (Id.). Mr. Weimholt testified that the individual would be unable to perform any of plaintiff's past work. (Id.). Mr. Weimholt stated that the individual would be capable of performing other work, such as pharmaceutical packaging (6,000 positions nationally, 1,200 in Missouri); document imaging (15,000 positions nationally, 300 in Missouri); and electronic and semi-conductor assembly

(100,000 positions nationally, 2,000 in Missouri).  (Tr. 49).

The ALJ next asked Mr. Weimholt to assume the same limitations as the first hypothetical, with the additional limitation that the individual would need to lie down once during the day for twenty minutes.  (Id.).  Mr. Weimholt testified that the individual would be unable to perform any jobs.  (Tr. 50).

## B.      Relevant Medical Records

The record reveals that plaintiff underwent an L5-S1 fusion on February 9, 2006, performed by neurosurgeon Joel West Ray, M.D, due to a diagnosis of herniated nucleus pulposus.[5]  (Tr. 325-28).

On April 26, 2006, Dr. Ray indicated that plaintiff had participated in physical therapy and had done "excellent."  (Tr. 319).  Plaintiff denied any lower extremity pain, tingling, weakness, or numbness, but reported some mild back pain at times.  (Id.).  Plaintiff was on no pain medication at this time.  (Tr. 320).

Plaintiff presented to the emergency room at Madison Medical Center on March 1, 2007, with complaints of a sudden onset of shakiness and tremors.  (Tr. 277).  Plaintiff denied use of street drugs.  (Id.).  Plaintiff tested positive for cannabis.  (Id.).  Plaintiff was diagnosed with anxiety attack, headache, and positive cannabis use.  (Id.).

Plaintiff received treatment at Crosstrails Medical Center for complaints of back pain and right leg pain from November 2008 through August 2009.  (Tr. 197-233).

Plaintiff presented to the emergency room at Madison Medical Center on September 8,

---

[5]The soft fibrocartilage central portion of the intervertebral disc.  Stedman's Medical Dictionary, 1343 (28th Ed. 2006).

2009, with complaints of low back radiating down to her right leg.  (Tr. 294).  Plaintiff underwent

x-rays of the lumbar spine, which revealed a fused lower lumbar spine, with no acute findings.

(Tr. 295).  Plaintiff was diagnosed with back pain and was given pain medication.  (Tr. 294).

Plaintiff presented to Walter Major, LPC, at Community Counseling Center on November

2, 2009, with complaints of depression and "nerve problems."  (Tr. 228).  Plaintiff reported lack

of energy and difficulty sleeping due to her back pain.  (Id.).  Plaintiff indicated that she had been

depressed for a number of years, has bouts of crying frequently, and has some racing thoughts.

(Tr. 229).  Plaintiff had received no prior mental health treatment.  (Tr. 228).  Plaintiff denied

alcohol or drug abuse, and indicated that she last drank alcohol five years prior.  (Id.).  Upon

mental status exam, Mr. Major noted that plaintiff's affect was appropriate and her speech was of

good tone, rate, and pace; and her mood appeared anxious, overwhelmed, and somewhat

depressed.  (Tr. 229).  Mr. Major indicated that plaintiff was "very friendly and communicative."

(Id.).  Mr. Major diagnosed plaintiff with major depressive disorder,[6] recurrent, moderate;

obsessive compulsive disorder;[7] and assessed a GAF score of 60.[8]  (Tr. 230).  Mr. Major

recommended a psychiatric evaluation.  (Id.).

---

[6]A mental disorder characterized by sustained depression of mood, anhedonia, sleep and appetite disturbances, and feelings of worthlessness, guilt, and hopelessness.  Stedman's at 515.

[7]A type of anxiety disorder the essential features of which include recurrent obsessions, persistent intrusive ideas, thoughts, impulses or images, or compulsions sufficiently severe to cause marked distress, be time-consuming, or significantly interfere with the person's normal routine, occupational functioning, usual social activities, or relationships with others.  See Stedman's at 570.

[8]A GAF score of 51-60 denotes "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), 32 (4th Ed. 1994).

Plaintiff saw Thomas Nowotny, M.D., staff psychiatrist at Community Counseling Center on December 11, 2009, for a psychiatric evaluation. (Tr. 225-27). Plaintiff reported that she tried marijuana two times at the age of eighteen and that she had not consumed alcohol in the past year. (Tr. 225). Upon examination, plaintiff was pleasant and cooperative, her flow of thought was logical with good amount of content, her speech was somewhat slow when delivered, her affect was euthymic, and her mood was depressed and sad. (Tr. 226). Plaintiff endorsed feelings of worthlessness, anhedonia, and low motivation. (Tr. 227). Plaintiff's insight and judgment were fair. (Id.). Dr. Nowotny diagnosed plaintiff was major depression, recurrent, moderate; obsessive compulsive disorder; and a GAF score of 50.[9] (Id.). Dr. Nowotny prescribed Pristiq[10] and Trazodone, and recommended that plaintiff follow-up in five to six weeks. (Id.).

Plaintiff saw Kimberly Keser, N.P., on February 15, 2010, for a consultative examination. (Tr. 233-35). Plaintiff complained of constant pain in the right lower extremity. (Tr. 233). Plaintiff also reported left lower back and leg pain due to a recent fall. (Id.). Plaintiff indicated that she did not have a regular healthcare provider, and that she takes over-the-counter Motrin for pain. (Id.). Upon examination, plaintiff used no device for ambulation, her gait was normal, and she was able to get on and off the exam table without difficulty. (Tr. 234). Plaintiff had some difficulty with walking heel to toe due to balance issues, she was unable to touch her toes, and she had difficulty squatting. (Id.). Plaintiff's lower extremity muscle weakness was 4/5 on the right and 5/5 on the left. (Tr. 237). Plaintiff had full range of motion of the cervical spine and

---

[9]A GAF score of 41 to 50 indicates "serious symptoms" or "any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM-IV at 32.

[10]Pristiq is indicated for the treatment of major depressive disorder. See PDR at 3247.

plaintiff's range of motion of the lumbar spine was slightly reduced. (Id.). Ms. Keser noted that plaintiff's affect and demeanor were appropriate. (Id.).

James W. Morgan, Ph.D. completed a Psychiatric Review Technique on March 3, 2010, in which he expressed the opinion that plaintiff's mental impairments were not severe. (Tr. 239).

Plaintiff presented to the emergency room at Madison Medical Center on July 11, 2010, with complaints of lower back pain radiating to her right hip and right knee. (Tr. 280). Plaintiff was diagnosed with lumbar disc disease and was prescribed Hydrocodone and Elavil.[11] (Id.).

Plaintiff started receiving pain management treatment at Advanced Pain Center on July 15, 2010, at which time she complained of pain in her low back and right lower extremity. (Tr. 316). Plaintiff reported that her pain was a ten on a scale of one to ten, and that it interferes with some daily activities. (Tr. 316). Dr. Su Min Ko indicated that x-rays performed on June 23, 2010 revealed a fusion at L4 through S1, with a fractured screw at S1; and alignment of the vertebral bodies within normal limits. (Id.). Upon physical examination, Dr. Ko noted some tenderness in the sacral spine and at the SI joint. (Tr. 317). Dr. Ko diagnosed plaintiff with degeneration of lumbar or lumbosacral intervertebral disc. (Id.). Dr. Ko prescribed a topical pain medication, Hydrocodone, and Tramadol. (Id.).

Plaintiff underwent x-rays of the lumbar spine on July 17, 2010, which revealed a fractured transpedicular screw at S1; and mild dextroscoliosis.[12] (Tr. 292).

On August 24, 2010, plaintiff saw Abdul N. Naushad, M.D. at Advanced Pain Center, at

_____

[11]Elavil is an antidepressant indicated for the treatment of mood disorders and nerve pain. See WebMD, http://www.webmd.com/drugs (last visited May 7, 2013).

[12]Curvature of the spine to the right. See Stedman's at 1734.

which time plaintiff reported that she had no complaints and that her medications were working. (Tr. 313). In October 2010, November 2010, and December 2010, plaintiff reported pain but indicated that her medications were effective and that she had no side effects. (Tr. 306, 303, 299).

## The ALJ's Determination

The ALJ made the following findings:

1.  The claimant has not engaged in substantial gainful activity since November 10, 2009, the application date (20 CFR 416.920(b) and 416.971 *et seq.*).

2.  The claimant has the following severe impairments: degenerative disc disease, obsessive compulsive disorder, and depression (20 CFR 416.920(c)).

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work except she requires a sit/stand option every 30 minutes while remaining on task, and is limited to simple repetitive tasks with only occasional contact with the public, co-workers, and supervisors.

5.  The claimant is unable to perform any past relevant work (20 CFR 416.965).

6.  The claimant was born on March 20, 1964 and was 43 years old, which is defined as a younger individual age 18-44, on the date the application was filed (20 CFR 416.963).

7.  The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8.  Transferability of jobs skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national

economy that the claimant can perform (20 CFR 416.960(c) and 416.966).

(Tr. 12-17).

The ALJ's final decision reads as follows:

Based on the application for supplemental security income protectively filed on November 10, 2009, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

(Tr. 18).

## Discussion

### A.    Standard of Review

Judicial review of a decision to deny Social Security benefits is limited and deferential to the agency. See Ostronski v. Chater, 94 F.3d 413, 416 (8th Cir. 1996). The decision of the SSA will be affirmed if substantial evidence in the record as a whole supports it. See Roberts v. Apfel, 222 F.3d 466, 468 (8th Cir. 2000). Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion. See Kelley v. Callahan, 133 F.3d 583, 587 (8th Cir. 1998). If, after review, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the denial of benefits must be upheld. See Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992). The reviewing court, however, must consider both evidence that supports and evidence that detracts from the Commissioner's decision. See Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996). "[T]he court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contrary." Burress v. Apfel, 141 F.3d 875, 878 (8th Cir. 1998). The analysis required has been described as a "searching inquiry." Id.

**B.    The Determination of Disability**

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 416 (I) (1) (a); 42 U.S.C. § 423 (d) (1) (a).  The claimant has the burden of proving that s/he has a disabling impairment.  See Ingram v. Chater, 107 F.3d 598, 601 (8th Cir. 1997).

The SSA Commissioner has established a five-step process for determining whether a person is disabled.  See 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 141-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d. 119 (1987); Fines v. Apfel, 149 F.3d 893, 894-895 (8th Cir. 1998).  First, it is determined whether the claimant is currently engaged in "substantial gainful employment."  If the claimant is, disability benefits must be denied. See 20 C.F.R. §§ 404.1520, 416.920 (b).  Step two requires a determination of whether the claimant suffers from a medically severe impairment or combination of impairments.  See 20 C.F.R §§ 404.1520 (c), 416.920 (c).  To qualify as severe, the impairment must significantly limit the claimant's mental or physical ability to do "basic work activities."  Id.  Age, education and work experience of a claimant are not considered in making the "severity" determination.  See id.

If the impairment is severe, the next issue is whether the impairment is equivalent to one of the listed impairments that the Commissioner accepts as sufficiently severe to preclude substantial gainful employment.  See 20 C.F.R. §§ 404.1520 (d), 416.920 (d).  This listing is found in Appendix One to 20 C.F.R. 404.  20 C.F.R. pt. 404, subpt. P, App. 1.  If the impairment meets or

equals one of the listed impairments, the claimant is conclusively presumed to be impaired. <u>See</u> 20 C.F.R. §§ 404.1520 (d), 416.920 (d). If it does not, however, the evaluation proceeds to the next step which inquires into whether the impairment prevents the claimant from performing his or her past work. <u>See</u> 20 C.F.R. § 404.1520 (e), 416.920 (e). If the claimant is able to perform the previous work, in consideration of the claimant's residual functional capacity (RFC) and the physical and mental demands of the past work, the claimant is not disabled. <u>See</u> <u>id.</u> If the claimant cannot perform his or her previous work, the final step involves a determination of whether the claimant is able to perform other work in the national economy taking into consideration the claimant's residual functional capacity, age, education and work experience. <u>See</u> 20 C.F.R. §§ 404.1520 (f), 416.920 (f). The claimant is entitled to disability benefits only if s/he is not able to perform any other work. <u>See</u> <u>id.</u> Throughout this process, the burden remains upon the claimant until s/he adequately demonstrates an inability to perform previous work, at which time the burden shifts to the Commissioner to demonstrate the claimant's ability to perform other work. <u>See</u> <u>Beckley v. Apfel</u>, 152 F.3d 1056, 1059 (8th Cir. 1998).

The Commissioner has supplemented this five-step process for the evaluation of claimants with mental impairments. <u>See</u> 20 C.F.R. §§ 404.1520a (a), 416.920a (a). A special procedure must be followed at each level of administrative review. <u>See</u> <u>id.</u> Previously, a standard report entitled "Psychiatric Review Technique Form" (PRTF), which documented application of this special procedure, had to be completed at each level and a copy had to be attached to the ALJ's decision, although this is no longer required. <u>See</u> 20 C.F.R. §§ 404.1520a (d), (d) (2), (e), 416.920a (d), (d) (2), (e); 65 F.R. 50746, 50758 (2000). Application of the special procedures required is now documented in the decision of the ALJ or Appeals Council. <u>See</u> 20 C.F.R. §§

404.1520a (e), 416.920a (e).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. See 20 C.F.R. §§ 404.1520a (b) (1), 416.920a (b) (1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a (b) (2), 416.920a (b) (2). The Commissioner must then rate the degree of functional loss resulting from the impairments in four areas deemed essential to work: activities of daily living, social functioning, concentration, and persistence or pace. See 20 C.F.R. §§ 404.1520a (b) (3), 416.920a (b) (3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. See id. Next, the Commissioner must determine the severity of the impairment based on those ratings. See 20 C.F.R. §§ 404.1520a (c), 416.920a (c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. See 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. See id. If there is a severe impairment but the impairment does not meet or equal the listings, then the Commissioner must prepare a residual functional capacity assessment. See 20 C.F.R. §§ 404.1520a (c)(3), 416.920a (c)(3); Pratt, 956 F.2d at 834-35; Jones v. Callahan, 122 F.3d 1148, 1153 n.5 (8th Cir. 1997).

**C.**     **Plaintiff's Claims**

Plaintiff first argues that the ALJ erred in finding that plaintiff did not meet a listing.

Plaintiff next argues that the ALJ erred in determining plaintiff's RFC.  The undersigned will

discuss plaintiff's claims in turn.

**1.**     **Listings**

Plaintiff argues that she met Listings 1.02(B)(2)(b), 1.05, and 1.08.

"The claimant has the burden of proving that his impairment meets or equals a listing,"

<u>Carlson v. Astrue</u>, 604 F.3d 589, 593 (8th Cir. 2010); and, "'[t]o meet a listing, an impairment

must meet all of the listing's specified criteria,'" <u>id.</u> (quoting <u>Johnson v. Barnhart</u>, 390 F.3d 1067,

1070 (8th Cir. 2004)).

Listing 1.02 states, in relevant part,

> 1.02     *Major dysfunction of a joint(s) (due to any cause)*: Characterized by gross
> anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis,
> instability) and chronic joint pain and stiffness with signs of limitation of motion or
> other abnormal motion of the affected joint(s), and findings on appropriate
> medically acceptable imaging of joint space narrowing, bony destruction, or
> ankylosis of the affected joint(s). With:
>
> A.     Involvement of one major peripheral weight-bearing joint (*i.e.*, hip, knee,
> or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; or
>
> B.     Involvement of one major peripheral joint in each upper extremity (i.e.,
> shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross
> movements effectively, as defined in 1.00B2c.

20 C.F.R. Part 404, Subpart P, App. 1, § 1.02.

Although plaintiff argues that she meets Listing "1.02(B)(2)(b)," no such section exists.

Plaintiff appears to be relying instead on listing 1.02(B).  Listing 1.02(B) requires that plaintiff

demonstrate an inability to perform fine and gross movements effectively.  There is no evidence of

difficulty in plaintiff's ability to perform fine and gross movements. Thus, plaintiff's argument that the ALJ erred in finding she did not meet Listing 1.02(B) lacks merit.

Plaintiff next argues that she meets Listing 1.05. Listing 1.05 concerns amputation. <u>See</u> 20 C.F.R. Part 404, Subpart P, App. 1, § 1.05. This issue is not relevant to this case. Thus, the ALJ properly found that plaintiff did not meet Listing 1.05.

Plaintiff finally argues that she meets Listing 1.08. To meet Listing 1.08, a claimant must have "[s]oft tissue injury (e.g., burns) of an upper or lower extremity, trunk, or face and head." <u>See</u> 20 C.F.R. Part 404, Subpart P, App. 1, § 1.08. There is no evidence in the record of soft tissue injury. Thus, the ALJ properly found that plaintiff did not meet Listing 1.08.

In this case, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals a listed impairment. (Tr. 12). The ALJ specifically considered Listing 1.04, disorders of the spine, which was appropriate due to plaintiff's severe spinal impairments. The ALJ found that plaintiff did not meet this listing because plaintiff's degenerative disc disease of the lumbar spin has not resulted in compromise of a nerve root or the spinal cord; and there is no evidence of nerve root compression characterized by neuro-anatomical distribution of pain, motor loss, sensory or reflex loss, or positive straight leg raising. <u>See</u> 20 C.F.R. Part 404, Subpart P, App. 1, § 1.04.

Accordingly, the undersigned recommends that the decision of the Commissioner be affirmed as to this point.

## 2.    Residual Functional Capacity

Plaintiff next argues that the ALJ failed to consider plaintiff's pain as a significant non-exertional limitation. Plaintiff contends that the ALJ's determination that plaintiff retained the

RFC for light work is not supported by substantial evidence.

RFC is what a claimant can do despite her limitations, and it must be determined on the basis of all relevant evidence, including medical records, physician's opinions, and claimant's description of her limitations. <u>Dunahoo v. Apfel</u>, 241 F.3d 1033, 1039 (8th Cir. 2001). Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, a claimant's RFC is a medical question. <u>Hutsell v. Massanari</u>, 259 F.3d 707, 711 (8th Cir. 2001) (citing <u>Lauer v. Apfel</u>, 245 F.3d 700, 704 (8th Cir. 2001)). Therefore, an ALJ is required to consider at least some supporting evidence from a medical professional. <u>See</u> <u>Lauer</u>, 245 F.3d at 704 (some medical evidence must support the determination of the claimant's RFC); <u>Casey v. Astrue</u>, 503 F.3d 687, 697 (the RFC is ultimately a medical question that must find at least some support in the medical evidence in the record). An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record. <u>See</u> <u>Cox v. Barnhart</u>, 471 F.3d 902, 907 (8th Cir. 2006).

The ALJ made the following determination with regard to plaintiff's RFC:

After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work except she requires a sit/stand option every 30 minutes while remaining on task, and is limited to simple repetitive tasks with only occasional contact with the public, co-workers, and supervisors.

(Tr. 13).

As stated above, plaintiff contends that the ALJ's determination that plaintiff retained the RFC for light work is not supported by substantial evidence. The ALJ, however, did not find that plaintiff had the RFC to perform light work; rather, the ALJ found that plaintiff retained the RFC for only a limited range of sedentary work. (Tr. 13). This determination is supported by substantial evidence.

In determining plaintiff's RFC, the ALJ first assessed the credibility of plaintiff's subjective complaints of pain and limitations under <u>Polaski v. Heckler</u>, 739 F.2d 1320, 1322 (8th Cir. 1984). <u>Polaski</u> requires the consideration of: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions. 739 F.2d at 1322.

The ALJ noted that the objective medical evidence did not support plaintiff's allegations of disability. Although the ALJ may not discount subjective complaints solely because they are not fully supported by the objective medical evidence, the lack of supporting objective medical evidence may be considered as a factor in evaluating the claimant's credibility. <u>See Curran-Kicksey v. Barnhart</u>, 315 F.3d 964, 968 (8th Cir. 2003).

The ALJ first discussed plaintiff's mental impairments. (Tr. 15-16). The ALJ noted that plaintiff saw Dr. Nowotny in December 2009 for a psychiatric evaluation, but never returned to Dr. Nowotny or another psychiatrist for treatment or medication refills. (Tr. 15, 225-27). The ALJ also noted that plaintiff did not indicate on her medication list that she was taking any medication for mental impairments. (Tr. 15). The fact that a plaintiff fails to seek regular medical treatment disfavors a finding of disability. <u>See Gwathney v. Chater</u>, 104 F.3d 1043, 1045 (8th Cir. 1997). Further, the failure to follow a prescribed course of treatment may detract from a claimant's credibility. <u>See O'Donnell v. Barnhart</u>, 318 F.3d 811, 819 (8th Cir. 2003). The ALJ also noted that, in February 2010, Ms. Keser found that plaintiff's mental status examination showed an appropriate affect and demeanor. (Tr. 15, 237). The ALJ properly concluded that plaintiff's allegations of a disabling mental impairments were not credible. (Tr. 15).

With regard to plaintiff's physical impairments, the ALJ noted that Ms. Keser's February

2010 examination revealed that plaintiff's gait was normal, she did not require the use of an assistive device, she was able to get on and off the exam table without difficulty, she had slightly reduced range of motion of the lumbar spine, and no muscle spasms or tenderness of the lumbar spine. (Tr. 16, 234, 237). Plaintiff had some difficulty squatting and walking heel to toe, and was unable to touch her toes. (Id.). The ALJ noted that plaintiff began treatment at Advanced Pain Clinic in July 2010, at which time some tenderness of the lumbar spine was noted but no muscle spasms. (Tr. 16, 316-17). Dr. Ko diagnosed plaintiff with degeneration of lumbar or lumbosacral intervertebral disc, and prescribed a topical pain medication, Hydrocodone, and Tramadol. (Id.). The ALJ noted that x-rays revealed a prior fusion at L4-L5 and L5-S1 with a left S1 transpedicular screw that was presumably fractured, and mild dextroscoliosis at L3-L4. (Tr. 16, 292). In August 2010, plaintiff reported that she had no complaints and that the medications were working. (Tr. 16, 313). On subsequent visits, plaintiff continued to report that her medications were working and she had no side effects. (Tr. 16, 306, 303, 299). The ALJ properly noted that evidence of effective medication resulting in relief may diminish the credibility of a claimant's complaints. See Rose v. Apfel, 181 F.3d 943, 944 (8th Cir. 1999).

The ALJ concluded that plaintiff's lumbar disc disease is not disabling. (Tr. 16). The ALJ stated that plaintiff does not have muscle spasms, she does not require an assistive device, and additional surgery and physical therapy have not been recommended. (Id.). The medical evidence cited by the ALJ supports these findings.

The ALJ next pointed out that none of plaintiff's treating doctors has stated that plaintiff is unable to work. The presence or absence of functional limitations is an appropriate Polaski factor, and "[t]he lack of physical restrictions militates against a finding of total disability."

- 20 -

Hutton v. Apfel, 175 F.3d 651, 655 (8th Cir. 1999) (citing Smith v. Shalala, 987 F.2d 1371, 1374 (8th Cir. 1993)).

The ALJ also discussed plaintiff's work history. The ALJ noted that plaintiff has no wages posted to her earnings record after 1995. (Tr. 16). The ALJ stated that plaintiff's earnings record does not support the proposition that, but for alleged impairments, she would be working and engaging in substantial gainful activity. (Id.). Plaintiff's poor earnings history prior to her alleged disability onset date was a valid factor for the ALJ to consider in assessing plaintiff's credibility. See Fredrickson v. Barnhart, 359 F.3d 972, 976-77 (8th Cir. 2004) (holding that the claimant was properly discredited due, in part, to her sporadic work record, reflecting low earnings and multiple years with no reported earnings, pointing to potential lack of motivation to work).

Finally, the ALJ pointed out that plaintiff has consistently denied the use of street drugs, yet she tested positive for marijuana in 2007. (Tr. 17, 277). The ALJ properly found that this inconsistency distracted from plaintiff's credibility. (Tr. 17).

An administrative opinion must establish that the ALJ considered the appropriate factors. See Holley v. Massanari, 253 F.3d 1088, 1092 (8th Cir. 2001). However, each and every Polaski factor need not be discussed in depth, so long as the ALJ points to the relevant factors and gives good reasons for discrediting a claimant's complaints. See Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001). In this case, the reasons given above by the ALJ for discrediting plaintiff's complaints of disabling pain are sufficient and his finding that plaintiff's complaints are not entirely credible is supported by substantial evidence.

After assessing plaintiff's credibility, the ALJ concluded that plaintiff's impairments

prevent her from engaging in strenuous activities on a day in and day out basis, but they would not prevent sedentary work activities that do not involve frequent interaction with others. (Tr. 17). The ALJ's RFC determination is supported by the record as a whole. The medical evidence discussed above reveals that plaintiff's back pain improved with medication. The ALJ acknowledged that plaintiff experienced some pain due to her back impairment and found she was capable of only a limited range of sedentary work. The ALJ included a sit/stand option, which is consistent with plaintiff's testimony that she has to "wiggle around a lot" to decrease her pain. (Tr. 41). The ALJ also credited plaintiff's testimony that she experienced difficulty with concentration and being around people, in limiting her to simple repetitive tasks with only occasional contact with the public, co-workers, and supervisors. The record does not support the presence of any greater limitations than those found by the ALJ. The vocational expert testified that an individual with the RFC found by the ALJ was capable of performing other work existing in significant numbers in the national economy. (Tr. 49).

Accordingly, the undersigned recommends that the decision of the Commissioner denying plaintiff's application for benefits be affirmed.


## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the decision of the Commissioner denying plaintiff's applications for Supplemental Security Income under Title XVI of the Social Security Act be **affirmed**.


The parties are advised that they have fourteen days in which to file written objections to

this Report and Recommendation pursuant to 28 U.S.C. § 636 (b) (1), unless an extension of time

for good cause is obtained, and that failure to file timely objections may result in a waiver of the

right to appeal questions of fact.


Dated this 1st day of August, 2013.

_Lewis M. Blanton_
LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE